UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JCS INDUSTRIES LLC,

    Plaintiff,

v.                                                      Case No. 6:19-cv-544-Orl-37EJK

DESIGNSTEIN LLC; and
BRYAN KNOWLTON,

    Defendants.
_____

## ORDER

Before the Court is Defendants DesignStein LLC and Bryan Knowlton's Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 14 ("**Motion**").) Plaintiff JCS Industries LLC responded (Doc. 17), and Defendants replied (Doc. 24). On review, the Motion is denied.

### I.    BACKGROUND

This trademark dispute arises from Defendants' alleged illegal ownership and use of a domain name to deceive and defraud Plaintiff's existing and prospective customers. (Doc. 9, ¶ 1.) Plaintiff, a Florida limited liability company, advertises and sells water level regulators for swimming pools under the name STAYPOOLLIZER at www.staypoollizer.com ("**Plaintiff's Website**").[1] (*Id.* ¶¶ 2, 9–11, 15.) According to

---

[1] Plaintiff owns the trademark for STAYPOOLLIZER for use in connection with water level indicators and water meters, which Plaintiff began using in November 2011 and was registered on June 2, 2015. (Doc. 9, ¶¶ 10–11, 13.)

-1-

Plaintiff, Defendants—a Texas limited liability company and Texas resident, respectively—also sell swimming pool water levelers under the name "Fill-O-Matic," which they did only after purchasing Plaintiff's product on April 11, 2018. (*Id.* ¶¶ 3–4, 18– 20.) On April 27, 2018, Defendants registered the domain name www.staypoolizer.com ("**Defendants' Website**"), which is identical to that of Plaintiff's Website but for omitting an "l," and redirected Defendants' Website to www.fill-o-matic.com—an interactive website where Defendants sell their water levelers. (*Id.* ¶¶ 21–22; *see also* Doc. 9-2, p. 2.) Plaintiff discovered Defendants' Website after its employee mistyped the domain name for Plaintiff's Website. (Doc. 9, ¶ 22.) Plaintiff contends Defendants willfully registered the domain name for Defendants' Website and diverted it to their Fill-O-Matic website "to capitalize on typographical errors committed by Plaintiff's existing and prospective customers." (*Id.* ¶¶ 21, 23, 26.)

Plaintiff demanded Defendants transfer the domain name for Defendants' Website to Plaintiff and compensate Plaintiff for lost sales due to Defendants' diversion of Plaintiff's customers, but Defendants refused. (*Id.* ¶ 27.) So Plaintiff sued Defendants for: (1) cybersquatting under 15 U.S.C. § 1125(d); (2) trademark infringement under 15 U.S.C. § 1114; (3) false designation of origin under 15 U.S.C. § 1125; (4) unfair competition under Florida's common law; and (5) deceptive and unfair trade practices under Florida Statutes §§ 501.201 et seq. (*Id.* ¶¶ 28–75.) Plaintiff seeks declaratory and injunctive relief, treble damages and profits, statutory and punitive damages, attorney's fees, costs, and prejudgment interest. (*See id*. at 11–13.)

Now Defendants move to dismiss the amended complaint for lack of personal

jurisdiction. (Doc. 14.) Briefing complete (*see* Docs. 17, 24), the matter is ripe.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(2) provides the mechanism for challenging a complaint for lack of personal jurisdiction. "The plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002) (citation omitted); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999). If unrefuted, the Court accepts the well-pled facts as true. *See Posner*, 178 F.3d at 1215. But if "the defendant submits affidavits to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier*, 288 F.3d at 1269 (citing *Posner*, 178 F.3d at 1215). Should the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, a court "must construe all reasonable inferences in favor of the plaintiff." *Id.* (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

## III. ANALYSIS

At issue is whether the Court has personal jurisdiction over the nonresident Defendants. Plaintiff says yes because "each Defendant has: (a) committed intentional and tortious acts within the state of Florida; (b) conducted substantial business within this state related to the unlawful activity at issue in this Complaint; and (c) otherwise availed themselves of this forum." (Doc. 9, ¶ 7; *see also* Doc. 17.) Defendants say no because the only alleged connection Defendants have to Florida is that they damaged Plaintiff, a Florida company, but Plaintiff cannot establish Defendants have any other

-3-

meaningful connection with Florida so exercising personal jurisdiction over them here would comport with the Due Process Clause of the Fourteenth Amendment. (*See* Doc. 14.) On review, the Court may exercise personal jurisdiction over Defendants.

"A federal district court . . . may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." *Meir*, 288 F.3d at 1269 (citations omitted). "The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis." *Madara*, 916 F.2d at 1514 (citations omitted). First, there must be a basis for jurisdiction under Florida's long-arm statute, which confers either general or specific personal jurisdiction over the nonresident. *Id.* at 1514, 1516 n.7 (citations omitted); *see* Fla. Stat. § 48.193. Second, exercising personal jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment so "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Madara*, 916 F.2d at 1514 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

### A. Long-Arm Statute

Florida's long-arm statute "provides for both specific and general jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (citing Fla. Stat. § 48.193(1)–(2)). "General personal jurisdiction exists when a defendant 'is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity.'" *Id.* (quoting Fla. Stat. § 48.193(2)). Specific jurisdiction "authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those

contacts related to the plaintiff's cause of action." *Id.* (citation omitted). Plaintiff alleges jurisdiction is proper under the Florida long-arm statute on two bases: (1) Defendants' "intentional and tortious acts within . . . Florida," and (2) Defendants' "substantial business [conducted] within . . . Florida related to the unlawful activity at issue." (Doc. 17, pp. 1, 5–6; *see also* Doc. 9, ¶ 7.) The Court starts with Plaintiff's assertion of specific jurisdiction based on Defendants' alleged tortious acts within Florida.

Florida's long-arm statute authorizes the exercise of specific personal jurisdiction where a claim arises from a defendant's commission of "a tortious act within [the] state." Fla. Stat. § 48.193(1)(a)(2). "[A] defendant's physical presence is not necessary to commit a tortious act in Florida. Rather, 'committing a tortious act in Florida . . . can occur through the nonresident defendant's telephonic, electronic, or written communications *into* Florida.'" *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1208 (Fla. 2010) (quoting *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)). "However, the cause of action must arise from the communications." *Id.* (quoting *Wendt*, 822 So. 2d at 1260). Further, "[u]nder Florida law, a nonresident defendant commits 'a tortious act within Florida' when he commits an act *outside* the state that caused *injury within Florida*." *Louis Vuitton*, 736 F.3d at 1353 (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008)); *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999).

Plaintiff has adequately alleged a trademark infringement claim based on Defendants' willful registration of the domain name for Defendants' Website, which is nearly identical to the domain name for Plaintiff's Website, and redirection of that website to www.fill-o-matic.com, where Defendants sell competing water level

regulators—all to capitalize on typographical errors made by Plaintiff's existing and prospective customers.² (*See* Doc. 9, ¶¶ 18–26, 40–48.) Trademark infringement constitutes a tortious act under Florida's long-arm statute, *see, e.g.*, *Louis Vuitton*, 736 F.3d at 1353, and "a trademark infringement on an Internet website causes injury and occurs in Florida 'by virtue of the website's accessibility in Florida.'" *Id.* at 1354 (quoting *Licciardello*, 544 F.3d at 1283). Here, Plaintiff asserted, and Defendants have not refuted, that Defendants' Website, with a domain name that allegedly infringes on Plaintiffs' trademark, is accessible in Florida. (*See* Docs. 9, ¶ 22; Doc. 17, p. 5; Doc. 17-1, ¶ 4.) Thus, the alleged infringement occurred in Florida based on the accessibility of Defendants' Website in Florida. *See Licciardello*, 544 F.3d at 1283–84; *see also Louis Vuitton*, 736 F.3d at 1353–54; *Xymogen, Inc. v. Digitalev, LLC*, No. 6:17-cv-869-Orl-31KRS, 2018 WL 659723, at *2 (M.D. Fla. Feb. 1, 2018) ("[A]s long as a website is accessible in Florida, it has been held that trademark infringement on the website occurs in Florida if the victim company is headquartered here."). So Plaintiff's allegations invoke specific jurisdiction under

---

² "In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine 'whether the allegations of the complaint state a cause of action.'" *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (quoting *Wendt*, 822 So. 2d at 1260). Defendants do not challenge the adequacy of Plaintiff's trademark infringement claim (*see* Docs. 14, 24), but the Court still considers its sufficiency. "To establish a *prima facie* case of trademark infringement, a plaintiff must allege that it had an enforceable right to the mark or name, and the defendant made an unauthorized use of the mark or name 'such that consumers were likely to confuse the two.'" *Wigglebutt Inn, Inc. v. Plan B Enters., LLC*, No. 2:11-cv-686-FtM-99DNF, 2012 WL 13098422, at *6 (M.D. Fla. July 11, 2012) (quoting *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011)). On review, Plaintiff has sufficiently pled a trademark infringement claim to allow application of Florida's long-arm statute based on the facts stated above. (*See* Doc. 9, ¶¶ 18–26, 40–48.)

Florida's long-arm statute. *See Licciardello*, 544 F.3d at 1283–84.

Defendants, relying on cases applying the Florida Supreme Court's decision in *Internet Solutions*, argue that it's not enough that Defendants' Website was accessible in Florida; instead, Plaintiff must establish Defendants' Website was accessed in Florida. (Doc. 14, pp. 8–9.) Further still, Defendants contend Plaintiff's allegation that one of its employees accessed Defendants' Website falls short as Plaintiff hasn't alleged a third party in Florida accessed it. (*Id.* at 9–10.) But this argument is unavailing for two reasons. To start, although some courts have applied *Internet Solutions* in trademark infringement cases, *see, e.g.*, *Volt, LLC v. Volt Lighting Grp., LLC*, 369 F. Supp. 3d 1241 (M.D. Fla. 2019),[3] *Internet Solutions* focuses on defamation cases. *See* 39 So. 3d at 1203. Considering the defamation claim there, the court noted that "the tort of libel is not completed until the statements are published" to a third party, which occurs for defamatory statements on the Internet when a third party accesses the website where the statements exist. *Id.* at 1214–15. From this, the court found that "material posted on the website about a Florida resident must not only be *accessible* in Florida, but also be *accessed* in Florida in order to

---

[3] Although cases in the Middle District of Florida have discussed and applied *Internet Solutions* in the trademark infringement context, *see, e.g.*, *3Lions Publ'g, Inc. v. Interactive Media Corp.*, 389 F. Supp. 1301 (M.D. Fla. June 10, 2019); *Wigglebutt Inn, Inc.*, 2012 WL 13098423; *Jackson-Bear Grp., Inc. v. Amirjazil*, No. 2:10-cv-332-FtM-29SPC, 2011 WL 1232985, at *5–6 (M.D. Fla. Mar. 30, 2011), other cases, even after *Internet Solutions*, have applied the website accessibility requirement or a broader injury interpretation for trademark infringement cases. *See, e.g.*, *Louis Vuitton*, 736 F.3d at 1353–54 (discussing the website accessibility requirement); *Xymogen, Inc.*, 2018 WL 659723, at *2 (discussing the accessibility requirement and victim's headquarters); *Roca Labs, Inc. v. Boogie Media, LLC*, No. 8:12–cv–2231–T–33EAJ, 2013 WL 2025806, at *5 (M.D. Fla. May 14, 2013) (discussing *Internet Solutions* but applying the broader construction focused on injury in Florida).

constitute the commission of a tortious act of defamation within Florida." *Id.* at 1203. Thus, for defamation cases, website access in Florida was necessary to satisfy an element (publication) of the tort of defamation. Not so with trademark infringement.

Even if Defendants' Website must be not only accessible but also accessed in Florida to satisfy Florida's long-arm statute, Plaintiff alleges its employee accessed Defendants' Website before Plaintiff sued. (Doc. 9, ¶ 22.) Specifically, Plaintiff alleges that "the Infringing Domain Name was discovered by one of Plaintiff's employees who mistyped the address for Plaintiff's website." (Doc. 9, ¶ 22; *see also* Doc. 17, p. 5; Doc. 17-1, ¶¶ 4–5.) So even if access in Florida were required for trademark infringement to occur in Florida for Florida's long-arm statute, Plaintiff has made that showing here. *See, e.g., Mercury Enters., Inc. v. Vesta Mgmt. Grp., LLC*, No. 8:12-cv-417-T-30MAP, 2012 WL 2087439, at *2 (M.D. Fla. June 8, 2012) (finding sufficient the allegation that a Florida resident accessed the website in Florida); *see also Jackson-Bear Grp.*, 2011 WL 1232985, at *6 (noting Florida's long-arm statute wasn't satisfied in part because "[t]here [was] no evidence that plaintiff, or any other Florida resident, accessed the website prior to the filing of the instant suit"); *cf. 3Lions Publ'g, Inc.*, 389 F. Supp. 3d at 1038 (considering, in part, "that the webpage containing the blog post was accessed within Florida by at least one person or entity — [the plaintiff]").

Defendants rely on *Wigglebutt Inn* to argue that access by a non-customer cannot satisfy Florida's long-arm statute because "trademark infringement . . . requires the likelihood of confusion among . . . customers, who must necessarily see the alleged infringement." (Doc. 14, p. 10 (citing 2012 WL 13098423, at *2).) The Court is not

persuaded by Defendants' unsupported bright-line rule given the circumstances in *Wigglebutt Inn* and those here. In *Wigglebutt Inn*, the plaintiff provided a declaration stating that the plaintiff's Chief Executive Officer accessed the infringing website in Florida. *See* 2012 WL 13098423, at *2. The issue with that declaration, however, was that it didn't reveal whether the website was accessed before the suit was filed. *Id.* The court also noted there was no evidence of access by other third parties in Florida, including current or prospective clients. *Id.* Yet even without that evidence, the court found Florida's long-arm statute satisfied based on "[the defendant's] tour of [the plaintiff's] business combined with its website."[4] *Id.* So that Plaintiff has not alleged a third-party customer accessed Defendants' Website in Florida does not destroy jurisdiction under Florida's long-arm statute here, where Plaintiff alleges Defendants' Website is accessible in Florida; its employee accessed Defendants' Website;[5] *and* Defendants bought Plaintiff's water level regulator, started selling their own water level regulators, and then registered the allegedly infringing domain name for Defendants' Website and redirected it to a website where customers could purchase Defendants' water level regulators. (*See* Doc. 9,

---

[4] The summary of the tour in *Wigglebutt Inn* is: "Bierlein did go to Florida to attempt to copy the [p]laintiff's trademark in starting his own business in Indiana. He specifically targeted Wigglebutt Inn by visiting its site, touring its facilities, and gathering information about Wigglebutt Inn and its business model, knowing that . . . Wigglebutt Inn was a registered trademark." No. 2:11-cv-686-FtM-99DNF, 2012 WL 13098422, at *7 (M.D. Fla. July 11, 2012). From this, the court found that "Plan B's activity of Bierlein visiting Wigglebutt Inn combined with its website is sufficient to satisfy Florida's long-arm statute." *Id.*

[5] Unlike the issue about date of access in *Wigglebutt Inn*, *see* 2012 WL 13098423, at *2, Plaintiff's allegation that an employee accessed the website appeared in Plaintiff's original complaint (Doc. 1, ¶ 22), so the access occurred before the lawsuit was filed.

¶¶ 19–21, 22.) That combination satisfies Florida's long-arm statute.[6]

Beyond the accessibility and actual access of Defendants' Website in Florida, another avenue for the satisfaction of Florida's long-arm statute exists: Defendants' conduct occurred within Florida for purposes of Florida's long-arm statute because it caused injury in Florida. Although the Florida Supreme Court hasn't resolved "the broader issue of whether injury alone satisfies" Florida's long-arm statute, *Internet Sols. Corp.*, 39 So.3d at 1206 n.6, federal district courts in Florida have held that trademark infringement occurs in Florida for purposes of the long-arm statute when the trademark owner resides there. *See, e.g.*, *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000); *see also, e.g.*, *Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tenn., Inc.*, 102 F. Supp. 3d 1264, 1271 (M.D. Fla. 2015); *Roca Labs, Inc*, 2013 WL 2025806, at *5. Here, Plaintiff is a Florida limited liability company with its principal place of business in Saint Cloud, Florida and the owner of the trademark. (Doc. 9, ¶¶ 2, 10–14.) These allegations likewise establish that the trademark infringement occurred in Florida under Florida's long-arm statute.[7] *See, e.g.*, *Mighty Mend of God, Inc.*, 102 F. Supp. 3d at 1271 ("At

---

[6] Moreover, Defendants' assertion that Plaintiff's allegation that its employee viewed the website "is insufficient to establish trademark infringement, which requires the likelihood of confusion among its customers, who must necessarily see the alleged infringement" fails for another reason. (*See* Doc. 14, p. 10.) Although the likelihood of consumer confusion is an element of trademark infringement, evidence of actual customer confusion is one of many factors to consider in determining whether this element of trademark infringement has been established. *See Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1182 (11th Cir. 1985) (discussing seven factors to consider, only one of which is "actual confusion").

[7] Defendants deny making any sales or shipments to Florida from April 27 to August 11, 2018, the period in which Defendants admit redirecting Defendants' Website to their Fill-O-Matic website, and deny targeting any business directly at Florida. (Doc.

any rate, Defendants also committed a tortious act within Florida by causing injury to Plaintiff, which is a Florida-based entity.").

In sum, Florida's long-arm statute is satisfied as to both Defendants because Plaintiff has sufficiently alleged tortious conduct within Florida satisfying Fla. Stat. § 48.193(1)(a)(2).[8] As Plaintiff has satisfied Florida's specific jurisdiction under the tortious act section of the long-arm statute, the Court need not address Plaintiff's other basis for personal jurisdiction under Florida's long-arm statute. *See Roca Labs, Inc.*, 2013 WL 2025806, at *2 ("This Court limits its analysis to the long-arm statute's tortious act provision because that provision is both 'applicable and sufficient' in the instant case."

---

14, pp. 6–7; Doc. 14-1, ¶¶ 5–9, 16, 18.) But a "lack of business activity targeting Florida residents does not contradict allegations that it infringed [the plaintiff's] trademark while conducting other business activity, which resulted in harm to [the plaintiff] in Florida." *See R&R Games, Inc. v. Fundex Games, Ltd.*, No. 8:12-CV-01957-T-27TBM, 2013 WL 784397, at *3 (M.D. Fla. Mar. 1, 2013). Also Defendants' relevant period isn't consistent with the allegations in the complaint, and Defendants do not deny making any sales or shipments to Florida during any other time period. Plaintiff also provided an affidavit from its private investigator stating that he bought one of Defendants' water levelers, which was shipped to him in Florida. (Doc. 17-1, ¶ 4.) Considering Plaintiff's evidence, Defendants have conducted at least some business in Florida related to the claims here. *See Xymogen, Inc.*, 2018 WL 659723, at *2 ("When the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, a court must construe all reasonable inferences in favor of the plaintiff." (citing *Madara*, 916 F.2d at 1514)).

[8] Defendant Knowlton's argument that he is not subject to personal jurisdiction in Florida because his conduct related to Defendants' Website occurred through Defendant DesignStein, LLC doesn't preclude personal jurisdiction over him. (*See* Doc. 14, pp. 11 n.2, 16 n.3; Doc. 14-1, ¶¶ 18–19) Under Florida law, the "corporate shield" doctrine distinguishes "between a corporate officer acting on one's own and a corporate officer acting on behalf of one's corporation" to analyze personal jurisdiction. *Doe v. Thompson*, 620 So.2d 1004, 1006 (Fla. 1993). But both the Florida Supreme Court and the Eleventh Circuit have acknowledged that this doctrine "is inapplicable where the corporate officer commits intentional torts." *Louis Vuitton*, 736 F.3d at 1355 (citing *Thompson*, 620 So.2d at 1006 n.1). As Plaintiff's allegations against Defendant Knowlton involve intentional torts, his corporate shield defense to personal jurisdiction fails. *See id.*

(citations omitted)). With that, the Court turns to the due process requirement for personal jurisdiction. *See Madara*, 916 F.2d at 1514.

B. **Due Process Clause**

"Even though a statute may permit a state to assert jurisdiction over a nonresident defendant, the due process clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Licciardello*, 544 F.3d at 1284 (quoting *Int'l Shoe Co.*, 326 U.S. at 319). So for a court to exercise personal jurisdiction over a nonresident defendant, the defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In making this determination, courts must consider whether there are "constitutionally significant contacts within the forum state" and "several other facts to determine whether its exercise would comport with 'fair play and substantial justice.'" *Licciardello*, 544 F.3d at 1284 (citing *Int'l Shoe*, 326 U.S. at 320). So the Court begins with Defendants' contacts with Florida before turning to the factors for fair play and substantial justice.

1. **Minimum Contacts**

"[T]he constitutional litmus test for personal jurisdiction is whether the defendant 'purposefully established "minimum contacts" in the forum State.'" *Licciardello*, 544 F.3d at 1285 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–74 (1985)). The defendant's conduct must satisfy three criteria to constitute constitutionally sufficient

minimum contacts: (1) "the contacts must be related to the plaintiff's cause of action or have given rise to it"; (2) "the contacts must involve 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws'"; and (3) "the defendant's contacts with the forum must be 'such that [the defendant] should reasonably anticipate being haled into court there.'" *Vermeulen v. Renault U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993) (citations omitted). Relevant here, "[i]ntentional torts . . . may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Licciardello*, 544 F.3d at 1285 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

In intentional tort cases, there are two applicable tests for evaluating whether exercising personal jurisdiction is constitutional: (1) the "effects" test in *Calder*; or (2) the traditional purposeful availment test. *Louis Vuitton*, 736 F.3d at 1356. "Many courts have employed the *Calder* 'effects' test," rather than the traditional test. *Licciardello*, 544 F.3d at 1286. "Under the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Louis Vuitton*, 736 F.3d at 1356 (citation omitted). This happens when the tort is: "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello*, 544 F.3d at 1286 (citing *Ziegler v. Indian River Cty.*, 64 F.3d 470, 474 (9th Cir. 1995)); *see also Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n.28 (11th Cir. 2009). Based on the alleged intentional tort here, the Court applies the effects test in assessing whether Defendants have constitutionally sufficient minimum contacts with Florida. *See Roca*

*Labs, Inc.*, 2013 WL 2025806, at *6 ("The Eleventh Circuit applies the 'effects' test for purposes of determining specific jurisdiction in intentional tort cases." (citing *Oldfield*, 558 F.3d at 1220 n.28)).

On review, Plaintiff has satisfied the "effects" test here. To start, Plaintiff alleges Defendants trademark infringement was intentional—Defendants willfully registered the domain name for Defendants' Website that is nearly identical to that of Plaintiff's Website. (*See* Doc. 9, ¶¶ 23, 26, 40–48.) Plaintiff alleges this conduct was aimed at Florida based on the allegations that Defendants first bought one of Plaintiff's pool water level regulators, started selling their own water levelers as a direct competitor of Plaintiff, and then registered the domain for Defendants' Website and redirected that website to their other website where they sell (and customers in Florida can buy) their competing water levelers.[9] (*See* Doc. 9, ¶¶ 18–22, 25; Doc. 9-2, p. 2.) Further, this aim is revealed by the accessibility of Defendants' Website and the Fill-O-Matic website in Florida—Defendants' Website was discovered based on a simple typographical error made by one of Plaintiff's employees in Florida. (*See* Doc. 9, ¶ 22; Doc. 17, p. 5; Doc. 17-1, ¶ 4.) And

---

[9] Defendants admit that Defendants' Website redirected to www.fill-o-matic.com, at least for a time. (Doc. 14, p. 10 ("As of August 11, 2018, however, the website domain name www.staypoolizer.com has not redirected to www.fill-o-matic.com."); *see also* Doc. 14-1, ¶ 17.) Additionally, relevant to the ability of customers to purchase Defendants' competing water levelers from the Fill-O-Matic website, Plaintiff provided the affidavit of its private investigator, who stated: "I accessed the Defendants' fully interactive website (located at https://www.fill-o-matic.com) from the state of Florida. I ordered and paid for a 'Fill-O-Matic' water leveler through this website. The 'Fill-O-Matic' was delivered to me via UPS to my undercover mailing facility located in the Middle District of Florida." (Doc. 17-1, ¶ 4.) Defendants also admit that they sell their products online on this interactive website. (Doc. 14, p. 6; Doc. 14-1, ¶ 14.)

Plaintiff alleges this was all "to capitalize on typographical errors committed by Plaintiff's existing and prospective customers." (*See* Doc. 9, ¶ 26.) Based on this progression of events and specifically the redirection of Defendants' Website with the allegedly infringing domain name to another website where customers in Florida and elsewhere can purchase competing water levelers, Defendants' conduct targeted Plaintiff (and Plaintiff's customers), was aimed at Florida, and Defendants should have expected that any harm suffered by Plaintiff would be suffered where Plaintiff is located—Florida. (*See* Doc. 9, ¶¶ 2, 18–22, 25–26.) Thus, under the "effects" test, Defendants' intentional conduct permits jurisdiction.[10] *See, e.g.*, *Roca Labs, Inc.*, 2013 WL 2025806, at *6 (finding the "effects" test satisfied when the defendant's "intent in creating the allegedly infringing websites was to direct customers to a competing product . . . and to profit therefrom"); *see also, e.g.*,

---

[10] Defendants, relying in part on *Walden v. Fiore*, 571 U.S. 277 (2014), argue that "Plaintiff has not and cannot establish that Defendants' conduct connects them to Florida in a meaningful way" and that "[e]ven if Plaintiff . . . allege[d] that Defendants committed intentional torts they knew would harm Plaintiff in Florida, doing so would still be insufficient to establish meaningful contacts to comport with due process." (Doc. 14, pp. 17–20.) Indeed, *Walden* states that for the "effects" test, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." 571 U.S. at 290. Further, in *Walden*, the Supreme Court found that personal jurisdiction did not exist in Nevada where "Petitioner's relevant conduct occurred entirely in Georgia, and the mere fact that his conduct affected Plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 291. But the tenuous connection to the forum state in *Walden* is distinguishable from Defendants' connection to Florida. Here, while Defendants' conduct at issue injures Plaintiff, a Florida resident, that is not Defendants' only connection to Florida. Defendants' conduct connects them to Florida in a meaningful way by virtue of the fact that Defendants bought Plaintiff's water leveler, began selling (and even sold) competing water levelers to customers in Florida on their Fill-O-Matic website (accessible and accessed in Florida), and registered and redirected the infringing domain name for Defendants' Website (also accessible and accessed in Florida) to their Fill-O-Matic website. *See supra* Subsection III.B.i.

*Licciardello*, 544 F.3d at 1288 ("The Constitution is not offended by the exercise of Florida's long-arm statute to effect personal jurisdiction over [the defendant] because his intentional conduct in his state of residence was calculated to cause injury to [the plaintiff] in Florida." (citation omitted)); *New Lenox Indus. v. Fenton*, 510 F. Supp. 2d 893, 904 (M.D. Fla. 2007) ("[W]here a defendant's tortious conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum.").[11]

### 2. Fair Play and Substantial Justice

With the constitutionally significant contacts established here, the Court must consider whether "the exercise of personal jurisdiction would violate traditional notions

---

[11] The Eleventh Circuit has also applied the traditional minimum contacts test in intentional tort cases. *See, e.g.*, *Louis Vuitton*, 736 F.3d at 1357–58; *U.S. Sec. Exch. Comm'n v. Carillo*, 115 F.3d 1540, 1542 (11th Cir. 1997). Under the traditional minimum contacts test for purposeful availment, courts must consider whether the nonresident defendant's contacts with the forum state: "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357 (citation omitted). Under this test, the result here would be the same. Defendants' purchase of Plaintiff's product, decision to start selling its own competing water levelers, registration of the infringing domain name for Defendants' Website, accessible in Florida, and redirection of that website to their other interactive website where they sell (and sold) competing water levelers to customers in Florida and elsewhere all show Defendants' contacts with Florida are related to this trademark infringement claim, that Defendants purposefully availed themselves of the privileges of doing business within Florida, and that Defendants should have reasonably anticipated being haled into court in Florida, where Plaintiff is located. (*See* Doc. 9, ¶¶ 2, 18–22, 25–26); *see also Louis Vuitton*, 736 F.3d at 1357–58. That said, many intentional tort cases involving claims like those here in the Internet context have applied only the "effects" test, without addressing the traditional minimum contacts test. *See, e.g.*, *Licciardello*, 544 F.3d at 1284–88; *Volt, LLC*, 369 F. Supp. 3d at 1246–49; *Roca Labs, Inc.*, 2013 WL 2025806, at *6–7; *Wigglebutt Inn*, 2012 WL 13098422, at *7–8.

of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355 (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)). The factors include: (1) the burden on Defendants; (2) Florida's interest in adjudicating the dispute; (3) Plaintiff's interest in obtaining convenient and effective relief; (4) the interests of the interstate judicial system in obtaining the most efficient resolution of controversies; and (5) the shared interests of Florida and Texas (where Defendants are located) in furthering fundamental substantive policies. *Sloss v. Indus. Corp. v. Eurisol*, 488 F.3d 922, 933 (11th Cir. 2007) (citations omitted); *see also Licciardello*, 544 F.3d at 1288 (listing relevant factors). "Where these factors do not militate against otherwise permitted jurisdiction, the Constitution is not offended by its exercise." *Licciardello*, 544 F.3d at 1284 (citation omitted).

Considering these factors, although the burden on Defendants in having to defend this action in Florida may be great—they have offered no argument about the gravity of any such burden (*see* Doc. 14)—it is outweighed by Plaintiff's interest in litigating this case in Florida. "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida," *Licciardello*, 544 F.3d at 1288 (citation omitted), and Defendants' intentional conduct causing injury in Florida is at issue here. (*See* Doc. 9.) What's more, Plaintiff has an interest in obtaining relief in Florida, where its alleged injuries occurred. *See Licciardello*, 544 F.3d at 1288 (finding a "plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy"). Last, the Court sees no reason the interests of the

interstate judicial system or shared interest of Florida or Texas would be harmed by adjudicating this dispute in Florida. So exercising personal jurisdiction over Defendants would not offend due process. The Motion is denied.

IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants DesignStein, LLC and Bryan Knowlton's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 14) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on October 22, 2019.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record