UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JCS INDUSTRIES LLC,

     Plaintiff,

v.                                                            Case No. 6:19-cv-544-Orl-37EJK

DESIGNSTEIN LLC; and BRYAN
KNOWLTON,

     Defendants.

_____

## <u>ORDER</u>

Defendants move for judgment on the pleadings (Doc. 92 ("**Pleadings Motion**"))
and partial summary judgment (Doc. 94 ("**Defendants' MSJ**")). Plaintiff JCS Industries
LLC ("**JCS**") also moves for summary judgment. (Doc. 95 ("**JCS's MSJ**").) The parties
responded (Docs. 96–98) and replied (Docs. 99, 100). On review, Defendants' MSJ and
Pleadings Motion are denied; JCS's MSJ is granted in part.

### I.     BACKGROUND[1]

This all began with one bad Amazon review. In 2018, Defendant Bryan Knowlton
("**Knowlton**") began selling automatic pool levelers under the name "Fill-O-Matic"
through his company, Defendant DesignStein, LLC. (Doc. 94-1, ¶¶ 1, 4, 6.) Defendants

---

[1] In resolving a summary judgment motion, the Court ordinarily presents the facts
in the light most favorable to the non-moving party. *See Battle v. Bd. of Regents*, 468 F.3d
755, 759 (11th Cir. 2006). Here, however, both parties move for summary judgment, so in
the Background, the Court presents the undisputed facts from the record evidence and
notes where facts are disputed.

sell the Fill-O-Matic on their website and Amazon. (*Id.* ¶ 6; Doc. 94-2, p. 2.) JCS also sells automatic pool levelers on its website and Amazon, under the name "Staypoollizer." (Doc. 94-1, ¶ 7; Doc. 94-2, p. 2; Doc. 95-1, ¶¶ 5, 7.) On April 26, 2018, Knowlton saw a bad Amazon review of the Fill-O-Matic. (Doc. 94-1, ¶ 15; Doc. 94-2, p. 27.) Believing the Amazon reviewer to be the daughter of JCS's owners, Knowlton called James Litteral—the man he thought was the owner of JCS and father of the Amazon reviewer. (Doc. 94-1, ¶¶ 16, 22.) What transpired on the call is hotly disputed. Knowlton says Mr. Litterral cussed at, berated, and humiliated him. (*Id.* ¶ 23.) Mr. Literral contends Knowlton threatened to harm his family. (Doc. 95-2, ¶ 7.) Whatever happened, the consequences were far-reaching.

Angry at the Amazon review and the phone call, Knowlton registered the domain www.staypoolizer.com ("**Domain**") and directed it to Defendants' Fill-O-Matic website. (Doc. 94-1, ¶ 24.) He felt this "was the only way for [him] to get over the intense feelings of anger and disrespect generated by [the] false Amazon review and [Mr. Litteral's] behavior on the phone." (*Id.*) But JCS trademarked "Staypoollizer." (Doc. 95-1, ¶ 5; Doc. 95-7, p. 7.)

In August 2018, a JSC employee tried to visit the Staypoollizer website but mistyped the address (missing one "l") and ended up at the Domain. (Doc. 95-1, ¶ 14.) JSC demanded Knowlton turn over the Domain. (Doc. 94-1, ¶ 25; Doc. 95-1, ¶ 15; Doc. 95-7, pp. 5–6.) He didn't. (Doc. 95-1, ¶ 15; Doc. 97-3, ¶¶ 4, 5.) Instead, he stopped forwarding the Domain to the Fill-O-Matic website the next day and cancelled the registration to the Domain on September 25, 2018. (Doc. 94-1, ¶¶ 25–26.) JCS learned of the cancellation

almost two year later and bought it for $2,013.17. (Doc. 95-1, ¶¶ 15, 28.)

JCS sued for cybersquatting ("**Count I**"), trademark infringement ("**Count II**"), false designation of origin ("**Count III**"), unfair competition under Florida's common law ("**Count IV**"), and a violation of Florida's Deceptive and Unfair Trade Practices Act ("**FDUTPA**") ("**Count V**"). (Doc. 9 ("**Complaint**").) Defendants move for judgment on the pleadings as to Count V and summary judgment as to Counts II to V. (Docs. 92, 94.) JCS moves for summary judgment on all counts. (Doc. 95.) With briefing complete (Docs. 96–100), the matter is ripe.

## II.   LEGAL STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmovant, *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006), so that "when conflicts arise between the facts evidenced by the parties, [the court] credit[s] the nonmoving party's *version*," *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005). But the "court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citation omitted).

### III.   ANALYSIS

### A.   Count I

JCS moves for summary judgment on Count I, a violation of the Anticybersquatting Consumer Protection Act ("**ACPA**"). (Doc. 95, pp. 8–12; Doc. 9, ¶¶ 28–39.) The ACPA was enacted to prevent cybersquatting—profiting from the registration of domain names containing trademarks. *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 775 (11th Cir. 2015). To prevail under the ACPA, "a plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006). Defendants argue summary judgment isn't appropriate because there's a genuine dispute over the last element—a bad faith intent to profit. (Doc. 98, pp. 5–9.)

Knowlton registered the Domain because he was angry about the Amazon review and the call with Mr. Littler. (Doc. 94-1, ¶ 24.) So there's no dispute Defendants acted in bad faith. (*See id.*) But "proving 'bad faith' is not enough." *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1246 (11th Cir. 2009) (cleaned up). "A defendant is liable only where a plaintiff can establish that the defendant had a 'bad faith *intent to profit*.'" *Id.* (quoting 15 U.S.C. § 1125(d)). Knowlton swears he didn't intend to "confuse consumers, capitalize on the Plaintiff's goodwill, and/or to tarnish the Plaintiff's reputation"—and so there was no intent to profit. (Doc. 94-1, ¶ 24.) Whether a jury will be persuaded remains to be seen, but the Court cannot ignore this evidence. *See Heron Dev. Corp. v. Vacation Tours, Inc.*, 814

F. App'x 468, 473 (11th Cir. 2020). As there is a genuine dispute over Defendants' intentions, summary judgment as to Count I is inappropriate. *See ZP No. 314, LLC v. ILM Cap., LLC*, 335 F. Supp. 3d 1242, 1261–64 (S.D. Ala. 2018); *Wastecare Corp. v. Shredderhotline.com Co.*, No. 2:11-CV-297-WCO, 2013 WL 12097949, at *5 (S.D. Fla. June 11, 2013).

### B.      Counts II to IV

Both parties move for summary judgment on Counts II to IV of JCS's Complaint: trademark infringement, false designation of origin, and unfair competition. (Doc. 9, ¶¶ 40–65; Doc. 94, pp. 12–19; Doc. 95, pp. 13–21.)

"In order to prevail on a trademark infringement claim based on a federally registered mark, the registrant must show that (1) its mark was used in commerce by the defendant without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive." *Optimum Tech., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (cleaned up). And the same analysis applies for an unfair competition claim under Florida common law. *See Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003). As for false designation of origin under § 1125, "a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (cleaned up).

There's no dispute Staypoollizer is a federally registered trademark and Defendants used a confusingly similar version of this mark (one "l" of a difference),

without authorization by registering the Domain and forwarding it to the Fill-O-Matic website. (Doc. 94-1, ¶ 24; Doc. 95-1, ¶ 5; Doc. 95-7, p. 7); *see Tana v. Dantanna's*, 611 F.3d 767, 775 (11th Cir. 2010) (affirming finding of trademark infringement where the "marks share an identical spelling but for a single letter"). The dispute boils downs to likelihood of confusion. (*See* Doc. 94, pp. 12–19; Doc. 95, pp. 14–17.)

While "likelihood of confusion is a question of fact, it may be decided as a matter of law" at the summary judgment stage by weighing seven factors. *Tana*, 611 F.3d at 775 n.7. The seven factors are: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) the defendant's intent; and (7) actual confusion. *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). "[T]he type of mark and the evidence of actual confusion are the most important." *Id.* But ultimately the Court should evaluate the overall balance. *Midway Servs. Inc.*, 508 F.3d at 649.

There are four types of marks, with increasing levels of strength and protection: (1) generic; (2) descriptive: (3) suggestive; and (4) arbitrary. *Frehling Enters., Inc.*, 192 F.3d at 1335–36. "The categories are based on the relationship between the name and the service or good it describes." *Id.* at 1335. Generic marks refer to a general class in which the product falls and are the weakest. *Id.* Descriptive marks describe the product. *Id.* Suggestive marks suggest characteristics of the product—for example, a "Penguin" refrigerator. *Id.* Arbitrary marks, the strongest type, have no relationship to the product—

for example, "Sun Bank." *Id.* at 1335–36. Staypoollizer is a suggestive mark, as the name suggests it has something to do with pools. The mark is strong, so this factor favors JCS.

The next four factors also favor JCS: the similarity of the marks, products, retail outlets, and advertising media. *See id.* at 1335. Defendants' Domain is almost identical to JCS's mark—off by just one letter. (Doc. 94-1, ¶ 24; Doc. 95-1, ¶ 5; Doc. 95-7, p. 7.) And both parties sell and advertise automatic pool levelers online. (Doc. 94-1, ¶¶ 4, 6, 7; Doc. 94-2, p. 2; Doc. 95-1, ¶¶ 5, 7.)

The sixth factor, as already discussed, is disputed—Defendants' intent. *See supra* Section III.A. So this factor is a wash. The final factor, actual confusion, "is the best evidence of a likelihood of confusion" but it's "not a prerequisite." *Frehling Enters., Inc.*, 192 F.3d at 1340. JCS points out its own employee misspelled Plaintiff's domain name and ended up on Defendants' Domain. (Doc. 95, p. 16; Doc. 95-1, ¶ 14.) Defendants argue the Domain didn't cause actual confusion but, at most, initial interest confusion—where the customer is lured to a product by the similarity of the mark but realizes the true source of the goods before buying the product. (Doc. 94, pp. 14–19.) And they say initial interest confusion is not actionable. (*See id.*) But the Court need not decide the issue because without more evidence, this "factor is not sufficiently dispositive so as to favor either side in an appreciable fashion." *Frehling Enters., Inc.*, 192 F.3d at 1341.

The undisputed facts are that both parties sell automatic pool levelers online and Defendants' Domain was almost identical to Plaintiff's strong mark. (*See* Doc. 94-1, ¶¶ 4, 6, 7, 24; Doc. 94-2, p. 2; Doc. 95-1, ¶¶ 5, 7; Doc. 95-7, p. 7.) Balancing the seven factors, Defendants' Domain was likely to cause confusion as a matter of law. *See Savannah College*

*of Art & Design, Inc. v. Sportswear, Inc.*, No. 19-11258, 2020 WL 7585635, at *10–11 (11th Cir. Dec. 22, 2020). So the Court grants JCS's MSJ as to Counts II to IV. JCS asks for treble damages, actual damages, and attorneys' fees from its trademark infringement claims. (Doc. 95, pp. 17–21, 23–25.) The Court will give both parties an opportunity to fully brief damages after all claims are resolved.

### C.      Count V

Last, both parties move for summary judgment on Count V—a claim under FDUTPA. (Doc. 9, ¶¶ 66–75; Doc. 94, pp. 19–20; Doc. 95, pp. 22–95.) Defendants also move for judgment on the pleadings as to Count V. (Doc. 92.) First, let's address the Pleadings Motion.

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The Court accepts as true all material facts alleged in the non-moving party's pleading and views those facts in the light most favorable to the non-moving party. *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). Judgment on the pleadings is appropriate when, considering the substance of the pleadings and judicially noticed facts, no material facts are in dispute and the movant is entitled to judgment as a matter of law. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

A FDUTPA claim has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). Defendants argue they're entitled to judgment on the pleadings because the Complaint fails to adequately allege actual damages. (Doc. 92.) But JCS alleges it suffered

"monetary loss" and "damages, including but not limited to loss of revenue and a damaged reputation." (Doc. 9, ¶¶ 24, 73.) Viewed in the light most favorable to JCS, this sufficiently includes actual damages. *See Dragon Jade Int'l, Ltd. v. Ultroid, LLC*, No. 8:17-cv-2422-T-27CPT, 2019 WL 2602895, at *3 (M.D. Fla. June 25, 2019). So Defendants' Pleadings Motion is denied.

Turning back to the summary judgment standard, "trademark infringement is an unfair and deceptive trade practice that constitutes a violation of FDUTPA." *Commodores Ent. Corp. v. McClary*, 324 F. Supp. 3d 1245, 1252 (M.D. Fla. 2018). So JCS's FDUTPA claim "rises or falls on the success of its trademark infringement" claims. *See Nat. Answers, Inc., v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008). As JCS succeeds on its trademark infringement claims, so it succeeds on its FDUTPA claim if it can show causation and actual damages. *See McClary*, 324 F. Supp. 3d at 1252. Defendants argue, again, JCS cannot show actual damages. (Doc. 94, pp. 19–20.) Not so.

At the summary judgment stage, JCS argues its actual damage is the cost of purchasing the Domain; it asks for $2,001.[2] (Doc. 95, pp. 22 n.9, 22–23; Doc. 95-1, ¶ 30.) Defendants argue the cost was of JCS's own making because JCS's counsel broke down communications to get the Domain transferred. (Doc. 98, pp. 16–18.) But this argument goes to potential mitigation of damages. Regardless of the failed negotiations between counsel, JCS purchased the Domain to recover control over the Staypoollizer mark after Defendants used it without authorization—a direct, not consequential, damage of

---

[2] JCS purchased the Domain for $2,013.17 and does not explain why it's seeking $12.17 less than the purchase price. (*See* Doc. 95, p. 23; *cf.* Doc. 95-1, ¶ 28.)

Defendants' actions. (Doc. 94-1, ¶ 24; Doc. 95-1, ¶¶ 28–30); *see PODS Enters., LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1286 (S.D. Fla. 2015); *Delta Air Lines, Inc. v. Network Consulting Assoc., Inc.*, No. 8:14-cv-948-T-24 TGW, 2014 WL 4347839, at *9 (M.D. Fla. Sept. 2, 2014). As the cost to purchase the Domain is an actual damage caused by Defendants' unauthorized use, JCS prevails on its FDUTPA claim. *See Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1270 (N.D. Fla. 2009).

## IV.   CONCLUSION

It is **ORDERED AND ADJUDGED**:

1. Defendants' Motion for Judgment on the Pleadings (Doc. 92) is **DENIED**.

2. Defendants' Motion for Summary Judgment (Doc. 94) is **DENIED.**

3. Plaintiff's Motion for Summary Judgment (Doc. 95) is **GRANTED IN PART AND DENIED IN PART:**

   a. Plaintiff's MSJ is **GRANTED** as to Counts II to V. (Doc. 9, ¶¶ 40–75.)

   b. In all other respects, Plaintiff's MSJ is **DENIED**.

4. This action will proceed to trial on Count I of Plaintiff's Complaint. (Doc. 9, ¶¶ 28–39.)

5. Within **fourteen (14) days** after all claims are resolved in this action, Plaintiff is **DIRECTED** to file briefing on all damages it seeks to recover, including attorneys' fees. Defendants will have **fourteen (14) days** to respond.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 5, 2021.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record